The opinion of the court was delivered by
Spencer, J.
The firm of Wallace & Co. having failed some years ago, obtained under the bankrupt law a composition with their creditors. David Wallace, of the firm, was made liquidator, and after paying off the creditors under the composition there remained a large surplus belonging to the late firm.
Suit was brought in the Fifth District Court by Wilder and Banker of the firm, in which they charged David Wallace with infidelity and mismanagement in liquidating its affairs. . Among other things it is charged “ that said David Wallace has, in order to increase his apparent capital in the firm of Wallace & Co., entered on the books thereof, as so much capital contributed by him, $15,000 of stock in the Louisiana Savings Bank and Safe Deposit Company, and $5000 of stock of the Security Bank of New York, neither of which is of any value, and he illegally claims and will claim that by reason of these credits so made to him he must first be paid the sum of $20,000, as capital, before their share of profits can be paid to petitioners.” They pray for an injunction and for the appointment of a receiver “ to liquidate said firm in accordance with law and the agreement of said parties, that a proper accounting and settlement may be had of the said partnership of Wallace & Co.; that they may have judgment against him for such sums as ■may be found due from him,” etc.
Pending this litigation, and before answer thereto, all the members of Wallace & Co. entered into an agreement, wherein it was recited that ■they were “now engaged in a litigation in the Fifth District Court, with reference to the settlement of the partnership that formerly existed between them under the style of Wallace & Co.,” and that “ all the parties, in advance of the decision of the court on the questions now submitted to it, are desirous of submitting all their differences to arbitra *336 tors and amicable compounders.” They thereupon agree “ to submit all their differences and all questions arising out of the settlement of the partnership of Wallace & Co., and all disputes which may arise between the parties in the course of the arbitration with reference to said partnership affairs, to arbitrators, who shall have the power of amicable compounders, to be appointed as hereinafter designated.” They then provide for the appointment of the arbitrators, and for that of two experts who are to assist the arbitrators — declaring that the .experts shall report any points of difference to the arbitrators, “ who after due proceeding shall finally decide the sarde, and shall finally state and settle the accounts of said partnership and award to each party whatever may be his right and due.” They then agree to enter into bonds each in favor of the other in the sum of $15,000, conditioned as follows: “ That they will abide by the award as made by the amicable compounders, and will pay the sum adjudged against them, within sixty days from the date of the award, the bankruptcy of the parties not excepted, otherwise they and their sureties to be liable for the amount of the award, and the amount of the penalty fixed in the bond.”
It is further provided that on the signing of this agreement, and the giving of the said bonds, Banker and Wilder are " to dismiss all proceedings now pending in the Fifth District Court, and this arbitration shall take the place of and be substituted for these proceedings, and shall be the mode of determining the rights between the parties.”
The arbitrators rendered their award, declaring in substance that the Wallaces had furnished all the capital of Wallace & Co.; that the surplus remaining after the payment to the creditors, under the composition, must, as far as it went, go first to replace and restore said capital; that Banker and Wilder were entitled to no part of said surplus; but on the contrary largely indebted to David Wallace, liquidator; and they therefore awarded that Wilder pay him $13,059 15.
The proceeding before us is one to have this award made executory. The only dispute is as to whether the arbitrators transcended the authority given them in the submission — it being conceded on all sides that their award, within the limits of the submission, is final, and not reviewable, as to questions of law or fact, in this or any other court. C. C. 3110 ; C. P. 459, 460; 4 An. 148; 7 An. 171; 13 An. 37.
We think that a party against whom an award of amicable compounders has been givpn may, on a proceeding, to have it made executory, show as caüse against it that the compounders acted beyond and transcended their authority, as given in the submission. Any award thus given outside of the terms-and scope of the submission is void, and its execution may be resisted when it is sought to be enforced. Otherwise, the aggrieved party would be without remedy against the *337 most extravagant usurpation of tlie amicable compounders. C. C. art 3121; C. P. 608-9 ; 10 An. 642.
We proceed therefore to consider the only question before us. Did the submission authorize the compounders not only to reject Wilder’s claims to a share of the said surplus, but also to condemn him to pay-in addition a sum of money ? We are constrained to answer this question in the affirmative. If we were to adopt the defendants’ theory, that the submission only embraced the matters involved in their suit in the Fifth District Court, we have seen, by extracts therefrom, that they themselves put the question of the amount of Wallace’s capital at issue, by demanding that certain items credited thereto should be disallowed. As we have seen, Wallace had not filed an answer in that suit at the time of the agreement to arbitrate, and the terms of that agreement were evidently intended to give him the right to set up before the arbitrators every defense and claim that was open to him in that suit. The terms of the agreement are as broad and unqualified as language can make them. Besides, it is manifest that the parties contemplated that the arbitrators were to render awards for money, for they formally agreed to and did give bond, each of them, not only to “abide by the award,” but to “pay the sum adjudged against them within sixty days,” notwithstanding their bankruptcy. If there was to be in no event a judgment for money against Wilder, why did he give bond and agree to pay such a judgment? We think the compounders acted clearly within the terms of the submission, and that the judgment of the court a qua rendering and making their award executory is correct, and it is affirmed at costs of appellant.
Rehearing refused.
Mr. Justice White takes no part in this decision.